■ In the Matter of JOHN STORAR. — Order affirmed, without costs. Memorandum: We note that it is generally recognized that terminally ill competent adults, whose medical experts agree that cure cannot be effected even by extraordinary treatment which may at best give only a short extension of life, have an absolute right to decline to receive such treatment, absent countervailing State interests. We hold that on the request and plea of his mother who is his closest relative and committee, John Storar, a profoundly mentally retarded incompetent and terminally ill adult, has the same right to refuse such treatment, especially here where it is painful and will only prolong his suffering. This right the court must enforce (see *Superintendent of Belchertown State School v Saikewicz,* 373 Mass 728; *Matter of Quinlan,* 70 NJ 10; and *Matter of Eichner [Fox],* 73 AD2d 431). All concur, except Cardamone, J. P., who dissents and votes to reverse and grant the petition in the following memorandum.

Cardamone, J. (dissenting). I dissent. In my view this case proves again the old adage that hard cases make bad law. Courts should not decide whether and when to discontinue the medical support system for a dying patient. This dilemma is part of the human condition too personal to extend beyond the decision of the family or guardian guided by the medical advice available. In taking it upon themselves to resolve this dilemma, courts have written reams on concepts such as "right of privacy", "compelling state interest", and the like. The volume of words itself well demonstrates that judicially nurtured concepts do not fit comfortably with nor begin to resolve so fundamental a riddle as human life. The use of terms such as "affirmative" or "passive", "ordinary" or "extraordinary" is a camouflage; they are distinctions without a difference. The root of the problem lies in an underlying Orwellian assumption that a court using substituted judgment is positioned — like Big Brother — to know what is best for the dying patient. In my view such is practical, legal and moral nonsense. It is practical nonsense because Judges have no extraordinary insight enabling them to measure the "quality of life". Deferring the decision to an "ethics committee" merely shifts the burden of decision to another unqualified tribunal, further removing it from the family or guardian where it rightfully belongs. It is legal nonsense because in our "rights-oriented" modern jurisprudence, all rights begin with the human, *qua* human. To deprive a human of life, no matter how burdened it may be, is to deny that person of any and all rights. Such ultimate deprivation of rights makes a mockery of the lesser rights so zealously safeguarded. It is moral nonsense because to judicially order treatment terminated is antithetical to the moral precepts which underlie the common law. Courts should refrain from the temptation to be judicially active in this type of case involving such momentous moral issues. As then Circuit Court Judge Burger (now Chief Justice of the United States Supreme Court) said, there are "myriads of problems and troubles which judges are powerless to solve; and this

is as it should be" *(Matter of President & Directors of Georgetown Coll.,* 331 F2d 1010, 1018 [Burger, J., dissenting]). As Justice Brandeis observed, the most comprehensive right and the one most valued by citizens against the government is the "right to be let alone" *(Olmstead v United States,* 277 US 438, 478). The circumstances here transcend mere statutory and constitutional views and lead inexorably back to the author of the natural law from whose foundation all law is derived. The imperative of the Fifth Commandment — Thou shalt not kill — is reflected in the beginnings of the common law. As Blackstone observed: "the law of England wisely and religiously considers, that no man hath a power to destroy life but by commission from God, the author of it" (4 Blackstone's Comm [5th ed], p 189). Our founding fathers enshrined the doctrine that life is an unalienable right in the Declaration of Independence. Its principal architect said: "The care of human life and happiness, and not their destruction, is the first and only legitimate object of good government." (Lipscomb & Bergh, 16 Writings of Thomas Jefferson [Monticello ed, 1904], p 359.) Justiciability requires that a legally protected right be in controversy. Mrs. Storar's personal choice is one which courts are powerless to enforce. The right she asserts does not exist as such. The use of substituted judgment to withhold from this ambulatory and conscious State-institutionalized mental incompetent treatment that most competent persons would choose is an unwarranted and unconscionable intrusion upon the sanctity of human life. There is but a short step from a mentally defective patient's "right to die" to his duty to die. (Appeal from order of Monroe Supreme Court — Mental Hygiene Law.) Present — Cardamone, J. P., Simons, Schnepp, Doerr and Witmer, JJ. [Decided Oct. 30, 1980.] [106 Misc 2d 880.]